UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AKERSON ENTERPRISES LLC dba KINDRED BRAVELY,<br><br>Plaintiff,<br><br>v.<br><br>SHENZHEN CONGLIN E-COMMERCE CO., LTD (dba SMARTLIN) and SHENZHEN LUTE INNOVATIONS TECHNOLOGY CO., LTD. fka SHENZHEN LUTEJIACHENG NETWORK TECHNOLOGY CO., LTD., aka SHENZHEN LUTEJIACHENG TECHNOLOGY, CO., LTD. aka SHENZHEN ROOT TECHNOLOGY CO. LTD. aka SHENZHEN ROOT E-COMMERCE CO., LTD. (collectively dba MOMCOZY),<br><br>Defendants. | CASE NO. 24-cv-00506<br><br>ORDER DENYING PLAINTIFF'S EX PARTE MOTION FOR ALTERNATIVE SERVICE WITHOUT PREJUDICE |

This matter comes before the Court on Plaintiff Akerson Enterprises LLC's motion for alternative service on Defendants. Dkt. No. 3. For the reasons explained below, Kindred's motion is DENIED.

ORDER - 1

## 1. BACKGROUND

Akerson Enterprises LLC d/b/a Kindred Bravely ("Kindred") is a women's apparel company that specializes in "comfortable and stylish clothing" for pregnant and nursing mothers. Dkt. 1 ¶ 11. Kindred holds a patent for a "multi-layer nursing bra." *Id.* ¶¶ 18-20. Kindred alleges Defendants—who "market themselves collectively as 'Momcozy'"—infringe on its patent by importing and selling the product "Upgrade 4-in-1 Pumping Bra" with a "CozyFitClasp." *Id.* ¶¶ 26–27. Kindred also alleges Defendants "deceptively manipulat[e] the Amazon.com ASIN system." *Id.* at 3.

Kindred identifies Defendants as Chinese entities, represented by U.S. counsel, with *pro hac vice* Chinese counsel in another case pending in this District: *Shenzhen Root Tech. Co. et al. v. Chiaro Tech., Ltd.*, (W.D. Wash. Case No. 2:23-cv-631-KKE). *Id.* at 4. Kindred attached pleadings and notes from *Chiaro* in support of this motion, purporting to show that Defendants' counsel "have provided email addresses for purposes of service in *Chiaro*." *Id.*

Kindred also provides a screenshot of the webpage https://momcozy.com/pages/contact-us. Dkt. No. 4-4 at 3. The screenshot includes the email address "support@momcozy.com." Dkt. No. 4-4 at 4. At the bottom of the webpage, there is a reference to a "Colorado Office" and a "Root Technology Ltd.," with a Colorado mailing address. *Id.* Kindred includes a screenshot from Colorado's Secretary of State that lists "Root technology ltd.," which is the same Colorado mailing address listed on the momcozy.com webpage. Dkt. No. 4-7 at 2. The screenshot also shows the name of a registered agent, Liqiang Zeng. *Id.* Despite this, Kindred explains

ORDER - 2

that "it is Defendant Shenzhen Lute that provides the privacy notice on the Momcozy website, not the Colorado entity . . ., and it is the Defendants that import, offer for sale, and sell Momcozy's products in the United States." Dkt. No. 3 at 3.

Kindred requests permission to serve Defendants by email, and it states that it will "shortly file a motion for preliminary injunction to stop [Defendants'] patent infringement and . . . unfair competition." *Id.*

## 2. ANALYSIS

### 2.1  Legal standards.

Rule 4(f) permits service on individuals in foreign countries by (1) any internationally agreed means of service, such as the Hague Convention; (2) if there is no internationally agreed means, by a method that comports with the foreign country's law; or (3) by "other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f).

Kindred argues that it should be allowed to serve Defendants via email because "[s]ervice via the Hague Convention would take much too long and preclude Plaintiff from obtaining meaningful injunctive relief." Dkt. No. 3 at 4. The Court construes Kindred's request as seeking permission to serve Defendants under Rule 4(f)(3). There's nothing that stops Kindred from petitioning the court for email service before attempting other means of service—indeed, "service of process under Rule 4(f)(3) is neither a 'last resort nor 'extraordinary relief.'" *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002). But Rule 4(f)(3) only authorizes service by "means not prohibited by international agreement" and thus cannot be used as an end run around the Hague Convention and its restrictions. *Rio Props.,*

ORDER - 3

*Inc.*, 284 F.3d at 1015 n.4 ("A federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention referenced in Rule 4(f)(1)."); *see Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) ("[C]ompliance with the Convention is mandatory in all cases to which it applies.").

As the party requesting alternative service under Rule 4(f)(3), Kindred must show that "the facts and circumstances of the present case necessitated the district court's intervention." *Rio Props., Inc.*, 284 F.3d at 1016. Kindred must also show that the requested method of service "comport[s] with constitutional notions of due process." *Id.*

Kindred cites a few cases in support of its request but assumes without much analysis that service may be had on a Chinese defendant via email. The Court does not share this assumption and begins its analysis with the Hague Convention, as the Convention is the starting point in "all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 276 (2017).

**2.2   The Hague Convention.**

Rule 4(f)(1) states that service may be had on any individual or business by the Hague Convention. China is a member of the Hague Convention. *See* Contracting Parties, Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited June 13, 2024). "[T]he Hague Service Convention specifies certain approved

methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Water Splash*, 581 U.S. at 273 (quoting *Schlunk*, 486 U.S. at 699).

Article 10(a) authorizes service of judicial documents by "postal channels" so long as the "State of destination does not object." Hague Convention, art. 10(a). But neither the Convention nor Article 10(a) "speak in specific terms of service by e-mail, fax, or other means of delivery unknown in the 1960's." *Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Ass'ns Identified on Schedule "A"*, 391 F. Supp. 3d 816, 825 (N.D. Ill. 2019). China, "[l]ike many signatories to the Hague Convention," *Nexon Korea Corp. v. Ironmace Co.*, No. C23-576-MLP, 2023 WL 3599548, at *2 (W.D. Wash. May 23, 2023), objects to Article 10(a) and service through postal channels. *Smart Study Co. v. Acuteye-Us*, 620 F. Supp. 3d 1382, 1394 (S.D.N.Y. 2022), *appeal dismissed sub nom. Smart Study Co. v. HAPPY PARTY-001*, No. 22-1810-CV, 2023 WL 3220461 (2d Cir. May 3, 2023) ("China has objected to service by postal channels."); *see* HCCH, Status Table 14 Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited, July 12, 2024).

"Courts have split on whether such an objection also prohibits service by e-mail, which is not explicitly listed in Article 10(a)." *Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465, 470 (D. Mass. 2020). One camp holds that because "the Hague Convention outlines specific methods of service," any "methods of service that are not specifically authorized are impermissible under the Convention." *Smart Study Co.*, 620 F. Supp. 3d at 1393. These courts reason that

ORDER - 5

"[t]he Convention … doesn't simply offer options for service abroad—options that plaintiffs can resort to or not at their discretion. Rather, unless an exception applies, the Convention-delineated methods of service … are exclusive." *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.,* 480 F. Supp. 3d 977, 983 (N.D. Cal. 2020).

Other courts reject this notion. For example, the Tenth Circuit held in *Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1294 (10th Cir. 2020), that "the relevant inquiry under Rule 4(f)(3) is not whether the [international] agreement affirmatively endorses service," but "whether the alternative service method in question is 'prohibited' by the agreement." Although the court did not address email service in particular, it found that if "the Convention does not contain a specific prohibition on [a] form of service," a district court could properly authorize that form of service under Rule 4(f)(3). *Id.* at 1294–95. Regarding email service on a Chinese defendant specifically, the Fifth Circuit has found that it does not violate the Hague Convention and can be appropriate under Rule 4(f)(3). *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018).

This is the better approach and the prevailing view among the courts in this district that have addressed the subject. *See, e.g.*, *Amazon.com Inc. v. Bamb Awns,* No. C22-402-MLP, 2023 WL 2837076, at *2 (W.D. Wash. Apr. 7, 2023) ("Whether or not the Hague Convention applies, this Court and others have concluded that email service on individuals located in China … is not prohibited by [the Hague Convention] or any other international agreement."); *Rubie's Costume Co., Inc. v.*

ORDER - 6

*Yiwu Hua Hao Toys Co.*, No. 2:18-CV-01530-RAJ, 2019 WL 6310564, at *2 (W.D. Wash. Nov. 25, 2019) ("the Court finds that Plaintiff's proposed methods of alternative service [i.e., email] are not expressly prohibited by international agreement."); *but see Amazon.com Inc. v. Robojap Techs. LLC*, No. C20-694 MJP, 2021 WL 4893426, at *2 (W.D. Wash. Oct. 20, 2021) (email service on defendant located in India was improper because India objects to Article 10's provisions for service by postal channels).[1]

Given the lack of binding precedent on this issue and the Court's agreement with the majority view of courts in this district, the Court finds that email service to a foreign defendant in China is allowed under Rule 4(f)(3) because the Hague Convention does not expressly prohibit it.

And as to Kindred's request to effect service by emailing Defendants' U.S.-based counsel, the Hague Convention does not apply in any event. *Schlunk*, 486

---

[1] By its plain terms, the Hague Convention does not prohibit email service, with whether the service is prohibited being the primary inquiry under Rule 4(f)(3). Still, some courts have found that "China's objection to service via 'postal channels' … necessarily encompass[es] an objection to service via email. *Smart Study Co.*, 620 F. Supp. 3d at 1394. "Reading a prohibition on service 'by postal channels' to prohibit service by email," however, "presents obvious textual difficulty." *Purple Innovation v. Foshan Dirani Design Furniture*, No. 2:22-CV-620-HCN-DAO, 2024 WL 1347356, at *4 (D. Utah Mar. 29, 2024) (citing Anova, 334 F.R.D. at 470). Besides, there are many sound reasons why a signatory state might object to service by postal mail but not by email. *Id.* Email is instantaneous, it does not require physical intrusion into the receiving country's territory, it may be more reliable than postal mail, it is easily tracked, the recipient can confirm receipt and whether they are in fact the correct recipient, and—in the case of online retailers overseas—it may be the only practical means of contact. *See id.* (collecting cases); *see also Hangzhou Chic Intelligent Tech. Co. v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 20 C 4806, 2021 WL 1222783, at *3 (N.D. Ill. Apr. 1, 2021) ("unlike postal service, email does not require physical intrusion on Chinese territory[.]").

ORDER - 7

U.S. at 708 (1988) ("Where service on a domestic agent is valid and complete …, our inquiry ends and the Convention has no further implications."); *United States v. Aquatherm GmbH*, No. 3:22-CV-1101-JR, 2023 WL 3018936, at *2 (D. Or. Apr. 20, 2023) ("The Hague Convention … is not applicable when service … is done domestically under Rule 4(f)(3).").

In sum, the Court concludes that service by email is not prohibited by international agreement. Before authorizing service under Rule 4(f)(3), however, the Court must still determine whether the facts and circumstances here necessitate court intervention and whether the proposed method of service comports with due process. *Rio Props.*, 284 F.3d at 1016.

### 2.3 Kindred fails to demonstrate why Court intervention is required under the present facts and circumstances.

Even if alternative service is permitted under Rule 4(f)(3), "[t]he party requesting alternate service must 'demonstrate that the facts and circumstances of the present case necessitate the district court's intervention.'" *Amazon.com, Inc. v. Tian*, No. 2:21-CV-00159-TL, 2022 WL 486267, at *2 (W.D. Wash. Feb. 17, 2022) (citing *Rio Props, Inc.*, 284 F.3d at 1016). Factors that would justify alternative service include whether the defendant was evading service and whether the plaintiff had been in contact with the defendant. *See Rubie's Costume*, 2019 WL 6310564, at *2; *see also Tian*, 2022 WL 486267, at *3 (citing Rio Props, Inc., 284 F.3d at 1016). Urgency provides another grounds for resorting to a "special method of service" under Rule 4(f)(3). *Rio Props.*, 284 F.3d at 1015.

1  Kindred has failed to demonstrate that the facts and circumstances of this case warrant special service right now. To be sure, Kindred argues in conclusory fashion that its need to serve Defendants with process is urgent, but nowhere does it explain the basis for the urgency. The Court will not presume. Nor does Kindred allege or show that Defendants have evaded service. In fact, the record suggests that Kindred has made *no* attempts to serve Defendants through the Hague Convention or otherwise. *See* Dkt. No. 3; *see also Rubie's Costume*, 2019 WL 6310564, at *3 (Denying alternative service to remaining defendants when, "[f]rom the record, it does not appear that Rubie's has attempted service on these defendants at all."). Similarly, despite Kindred's knowledge of Defendant's U.S. based counsel, it neither alleges nor demonstrates that tried to arrange service through Defendants' domestic counsel. *See id.*

On this record, it appears that Kindred requests alternative service merely because it is easier and quicker than other means of service, but "the desire for expedience and efficiency alone is not sufficient to justify alternative service." *Tian*, 2022 WL 486267, at *2. Because Kindred has failed to demonstrate that the circumstances require alternative service at this time, it need not consider the effect of Kindred's request on Defendants' due process rights.

### 3.  CONCLUSION

For the reasons stated above, Kindred's *ex parte* motion for alternative service is DENIED without prejudice. Plaintiffs may refile their motion to try to demonstrate that their request for alternative service is warranted by the facts and

ORDER - 9

circumstances of the case and that its requested means of service comport with due process.

Dated this 23 day of July, 2024.

Jamal N. Whitehead
United States District Judge

ORDER - 10